NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

RAMADA WORLDWIDE INC., F/K/A : 
RAMADA FRANCHISE SYSTEMS, :    **Hon. Dennis M. Cavanaugh**
INC., a Delaware Corporation, :
                                            :        **OPINION**
          Plaintiff, :
                                            :    Civil Action No. 10-cv-4092(DMC)(JAD)
             v. :
:
PETERSBURG REGENCY, LLC, a New :
Jersey Limited Liability Company, and :
Robert Harmon, an individual, :
:
         Defendant. :

---

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter having come before the Court upon Plaintiff Ramada Worldwide Inc.'s, formerly known as Ramada Franchise Systems, Inc., ("Plaintiff" or "Ramada") Motion for Summary Judgment as to the First, Third, Fifth, and Seventh Counts of its Verified Complaint. Pursuant to FED. R. CIV. P. 78, no oral argument was heard. After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Plaintiff's Motion for Summary Judgment is **granted.**

I. BACKGROUND[1]

The following facts are undisputed. Ramada is one of the largest guest lodging travel

---

[1] Unless otherwise indicated, facts contained in the Background section are derived from Plaintiff's Statement of Undisputed Material Facts. (Pl.'s Statement of Undisputed Material Facts, February 29, 2012, ECF No. 19-2)

1

facility franchise systems in the United States and is widely known as a provider of guest lodging facility services. Ramada is comprised of various federally-registered trade names, service marks, logos, and derivations thereof ("Ramada® Marks"). Ramada has the exclusive right to sub-license Ramada® Marks and the Ramada® System, which provides guest lodging service to the public under the Ramada name and certain services to its franchisees, including a centralized reservation system, advertising, publicity, and training services.

Defendant Petersburg Regency, LLC ("Petersburg Regency" or "Defendant") is a limited liability company organized and existing under the laws of New Jersey with its principal place of business in Petersburg, Virginia. Robert Harmon ("Harmon" or, collectively with Petersburg Regency, "Defendants") is a principal and the only constituent member of Petersburg Regency.

This case arises out of the termination of a license agreement dated January 14, 2003 ("License Agreement") between Ramada and Petersburg Regency for the operation of a 191-room Ramada® guest lodging facility located at 380 E. Washington Street, Petersburg, Virginia ("Facility"). Section 5 of the License Agreement provided that Petersburg Regency was to operate a Ramada® Inn guest lodging facility for a 15 year term, during which Petersburg Regency was permitted to use the Ramada® Marks in association with the operation and use of the Facility as part of Ramada's franchise system. Under section 7, section 18, and Schedule C of the License Agreement, Petersburg Regency was required to make certain periodic payments to Ramada for royalties, service assessments, taxes, interest, reservation system user fees, annual conference fees, and other fees (collectively "Recurring Fees"). Section 7.3 of the License Agreement states that interest shall accrue on such fees at the rate of 1.5% per month on all payments that come past due.

2

Pursuant to section 18.2 of the License Agreement, Petersburg Regency was permitted to terminate the License without cause or penalty beginning only on the fifth anniversary of the Opening Date, provided it give Ramada at least 6 months written notice of termination and that it was not in default under the License Agreement at the time notice was provided. Ramada was able to terminate, upon notice, if Petersburg Regency discontinued operating the Facility as a Ramada guest lodging establishment and/or lost possession or the right to possession of the Facility. Section 12.1 of the License Agreement provided that if the License Agreement was terminated, Petersburg Regency was required to pay damages to Ramada in accordance with a formula specified by the License Agreement. (License Agreement § 12.1, August 10, 2010, ECF No. 1-2). Pursuant to section 17.4 of the License Agreement, Petersburg Regency agreed that the non-prevailing party would "pay all cost and expenses, including reasonable attorney's fees, incurred by the prevailing party to enforce this Agreement or collect amounts owed under this Agreement." (License Agreement § 17.4). On or about January 14, 2003, Petersburg Regency also entered into an Addendum to the License Agreement for Satellite Connectivity Services ("Addendum"), agreeing to pay Addendum Liquidated Damages if the Addendum were to be terminated.

Harmon executed a personal guaranty of Petersburg Regency's obligations under the License Agreement ("Guaranty"). (Harmon Aff. 28:17-18, February 29, 2012, ECF No. 19-4). Pursuant to the terms of the Guaranty, Harmon agreed to make each payment and perform each of Petersburg Regency's unpaid or unperformed obligations under the License Agreement. (Harmon Aff.28:17-18).

On or about February 2, 2010, Defendants terminated the License Agreement by ceasing

3

to operate the Facility as a Ramada guest lodging facility. In a letter dated February 25, 2010, Ramada acknowledged Petersburg's unilateral termination of the License Agreement and advised it to: (1) immediately discontinue the use of all trade names, service marks, signs, and other forms of advertising associating it with the Ramada® System, (2) remove all items bearing the Ramada® Marks, (3) change all signs and listings in directories and similar guides which identified the Facility as a Ramada, (4) pay Ramada liquidated damages for premature termination in the sum of $192,000.00 pursuant to the terms of the License Agreement and Addendum, (5) de-identify the Facility within 10 days from receipt of notice, and (6) demanded outstanding Recurring Fees through the date of termination. Defendants continued to use Ramada® Marks to advertise and rent guest rooms at the Facility, and failed to remove signage in violation of the termination of the License Agreement though at least August 13, 2010. (Workman Aff. ¶ 46). Petersburg Regency and Harmon have not made any payments to Ramada since November 2007.[2] Ramada's complaint asserts eight counts against Defendants. (Pl.'s Verified Complaint, August 10, 2010, ECF No. 1). On February 29, 2012, Ramada filed a Motion for Summary Judgment as to the First, Third, Fifth, and Seventh Counts of its Verified Complaint with prejudice against Defendants (Pl.'s Motion for Summary Judgment, February 20, 2012, ECF No. 19). The First Count seeks a permanent injunction and damages for trademark infringement under the Lanham Act. (Pl.'s Complaint 11). The Third Count is a claim for liquidated damages pusuant to the License Agreement and Addendum. (Id. at 13). The Fifth Count seeks judgment against Petersburg Regency for the Recurring Fees due under the License

---

[2]Harmon admits that no payment has been made by either Petersburg Regency or himself as personal guarantor subsequent to that date. (Harmon Aff. 45:14-24).

Agreement, along with interest, attorney's fees, and costs of suit. (Id. at 14). The Seventh Count is a claim against Harmon under the Guaranty, for all liquidated or actual damages and Recurring Fees due under the License Agreement, along with interest, attorney's fees, and costs of suit and all profits, royalties, and other Recurring Fees owed to Ramada. (Id. at 16). Ramada seeks $192,000.00 in liquidated damages that became due as a result of the premature termination of the License Agreement (Pl.'s Brief 12), Recurring Fees in the amount of $702,281.10 inclusive of interest as of February 28, 2012 (id. at 13), $265,545.18 in infringement damages due to Defendant's unauthorized use of Ramada® Marks (id. at 17), and attorney's fees and costs (id. at 19).

Ramada alleges that Defendants' default under the License Agreement is not in dispute and that there is no question of fact concerning Defendants' material breaches of their clear and unambiguous contractual obligations. As such, Ramada asserts there can be no question of fact concerning Ramada's right to recover outstanding liquidated damages, and fees and costs in accordance with the terms of the License Agreement. Defendants have not filed opposition to Plaintiff's Motion for Summary Judgment.

## II.   MOTION FOR SUMMARY JUDGMENT

### A.   STANDARD OF REVIEW

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). The moving party bears the burden of showing that there is no genuine issue of fact. Celotex Corp., 477 U.S. at 330. "This burden has

two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party." Id. The non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, but must produce sufficient evidence to support a jury verdict in his favor. FED. R. CIV. P. 56(e); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "In determining whether there are any issues of material fact, the Court must resolve all doubts as to the existence of a material fact against the moving party and draw all reasonable inferences—including on issues of credibility—in favor of the nonmoving party." Newsome v. Admin. Office of the Courts of the State of N.J., 103 F. Supp.2d 807, 815 (D.N.J. 2000), aff'd, 51 Fed. App'x 76 (3d Cir. 2002) (citing Watts v. Univ. of Del., 622 F.2d 47, 50 (3d Cir. 1980)).

If the non-movant fails to oppose the motion for summary judgment, FED. R. CIV. P. 56(e) provides that the Court may only grant the motion for summary judgment "if appropriate." See, e.g., Anchorage Assoc. v. Virgin Islands Bd. of Tax Review, 922 F.2d 168, 175 (3d Cir.1990); see also Damiano v. Sony Music Entm't., 975 F.Supp. 623, 627 (D.N.J. 1996) (granting summary judgment motion because plaintiff's argument was unopposed and created no genuine issue of material fact). The motion is appropriately granted when that party is entitled to judgment as a matter of law. See Anchorage Assoc., 922 F.2d at 175.

When "the non-moving party fails to oppose the motion for summary judgment by written objection, memorandum, affidavits and other evidence, the Court will accept as true all material facts set forth by the moving party with appropriate record support." Carp v. IRS, CIV. A. No. 00-5992, 2002 WL 373448, at *2 (D.N.J. Jan. 28, 2002) (quoting Anchorage Assoc., 922

6

F.2d at 175). Even if a record contains facts that might provide support for a non-movant's position, "the burden is on the [non-movant], not the court, to cull the record and affirmatively identify genuine, material factual issues sufficient to defeat a motion for summary judgment." Morris v. Orman, CIV. A. No. 87-5149, 1989 WL 17549, at *8 (E.D.Pa. Mar.1, 1989) (citing Childers v. Joseph, 842 F.2d 689 (3d Cir.1988)); see also Atkinson v. City of Phila.,CIV. A. No. 99-1541, 2000 WL 793193, at *5 n. 8 (E.D.Pa. June 20, 2000).

### B. DISCUSSION

#### 1. LIABILITY ON COUNTS THREE AND FIVE

Ramada contends that there is no question of fact to preclude summary judgement on the issue of whether Defendants failed to comply with the contractual terms set forth in the License Agreement and that Defendants are thus liable for outstanding Recurring Fees and liquidated damages. When the "terms of a contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written." City of Orange Tp. v. Empire Mortg. Servicess, Inc., 775 A.2d 174, 179 (N.J. Sup. Ct. App. Div. 2001)(citations omitted). The initial determination of whether a contract's terms are clear or ambiguous is a question of law, suitable for decision on a motion for summary judgment. Driscoll Const. Co., Inc. v. State Dept. of Transportation, 853 A.2d 270, 276 (N.J. Sup. Ct. App. Div. 2004). A review of the relevant provisions of the License Agreement and Guaranty lead this Court to conclude that the language regarding the liquidated damages and Recurring Fees is not ambiguous. Further, Defendants do not dispute the validity of the contractual provisions providing for these damages and fees.

This Court looks next to whether Defendants complied with the terms of the License Agreement and Guaranty. Ramada asserts, and Defendants do not dispute, that the License Agreement required Petersburg Regency to operate the Facility as a Ramada facility for a 15-year term. Ramada asserts that there is no question of fact as to Petersburg Regency's breach of the contractual terms of the License Agreement; Petersburg terminated the License Agreement by ceasing to operate the Facility as a Ramada guest facility on or about February 2, 2010. (Pl.'s Statement of Undisputed Material Facts ¶ 38). Ramada contends that it has not been paid Recurring Fees since June of 2008. (Pl.'s Brief 4, February 29, 2012, ECF No. 19-3). As supporting evidence of the breach, Ramada cites to the deposition of Defendant Harmon (Harmon Dep., December 28, 2011, ECF No. 19-6) and the affidavit of Ramada's Vice President, Compliance and Government Relations, Valerie Capers Workman (Workman Aff., December 28, 2011, ECF No. 19-4). While being deposed, Harmon acknowledged that neither Defendant has paid Ramada any fees since November 2007. (Harmon Dep. 46:11-24, 47:3-7). When Harmon was asked in Plaintiff's Initial Interrogatories whether Defendants had paid all Recurring Fees, he stated "I am not sure, but, to the best of my knowledge, I believe so," yet Defendants offer no evidence to support this statement. See e.g., Port Auth. of N.Y. and N.J. v. Affiliated FM Ins., 245 F. Supp. 2d 563, 572 n.9 (D.N.J. 2001)("...it is incumbent on the responding party to issue a meaningful rejoinder to a given statement of material fact, lest that fact be deemed undisputed"). In light of this uncontradicted evidence and the unambiguity of the contract terms, all the elements necessary to establish a breach of the License Agreement and Guaranty by the Defendant are present.

Defendants have not asserted any defenses to the breach. The obligations to be incurred by Petersburg Regency, if it were to fail to comply with the provisions of the Licensing Agreement, were set forth in the Agreement and are not disputed. "[A]ny material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion." L. Civ. R. 56.1(a). The terms of the License Agreement are unambiguous and, on this issue, there is no ambiguity that would preclude summary judgment. See American Cyanamid v. Fermenta Animal Health Co., 54 F.3d 177, 181 (3d Cir. 1995). Because of Defendant's failure to make required payments pursuant to the License Agreement and Guaranty, while continuing to use the Ramada® Marks, the Plaintiff is entitled to summary judgment on the issue of liability for Counts Three and Five. Plaintiff's Motion for Summary Judgment is thus granted on Counts Three and Five.

### 2. LIABILITY ON COUNT SEVEN

Plaintiff further alleges that Ramada is entitled to Summary Judgment as to Liability on the Seventh Count of its complaint because there is no genuine issue of material fact regarding Harmon's breach of the Guaranty. To be entitled to a judgment on a guaranty, a plaintiff must show: "(1) execution of the guarantee by the guarantor (i.e. that it was the defendant who signed the guarantee); (2) the principal obligation and terms of the guaranty; (3) the lender's reliance on the guaranty in extending monies to the borrower; (4) default by principal obligator; (5) written demand for payment on the guarantee; (6) failure of the guarantor to pay upon written demand." U.S. on Behalf of Small Business Admin. v. DelGuercio, 818 F. Supp. 725, 727-28 (D.N.J. 1993) (citing 38 C.J.S. Guaranty §§ 8-14 and 38 Am.Jur.2d § 119). Each element has been established here.

First, Harmon acknowledges that he both read and signed the Guaranty and understood the implications of the document, namely that he would be liable for the company's failure to pay. (Workman Aff.. ¶ 38; Harmon Dep. 28:17-24; Response of Harmon to Pl.'s Request for Admissions ¶¶ 1-6, February 29, 2012, ECF No. 19-8). Second, the terms of the Guaranty and the obligations therein are unambiguous. If the terms of the contract are unambiguous, the court may construe the meaning or requirements of a contract as a matter of law for purposes of summary judgment. Nevets C.M. Inc. v. Mack Trucks, Inc., 726 F. Supp. 525, 531 (D.N.J. 1989), aff'd, 899 F. 2d 1218 (3d Cir. 1990). As discussed in the preceding section, Harmon was obligated under the terms of the Guaranty to immediately make each unpaid payment or perform each unperformed obligation of Licensee under the Agreement. (Workman Aff. ¶ 38). Defendants have alleged no evidence of a failure to misunderstand the terms of the Guaranty. The contractual provisions of the License Agreement are similarly not subject to differences or interpretation or ambiguity that would preclude summary judgment. See American Cyanamid v. Fermenta Animal Co., 54 F.3d 177, 181 (3d Cir. 1995).

It is clear that the reliance element has also been fulfilled; the Guaranty's purpose was to induce Ramada to sign the License Agreement with Defendant Petersburg. (See Pl.'s Brief 8). It has similarly not been disputed that Petersburg Regency defaulted under the terms of the Licensing agreement by ceasing to operate the Facility as a Ramada guest lodging facility, and by failing to pay amounts owed to Ramada under the Licensing Agreement's terms. (Harmon Dep. 31:12-32-2, 37:1-5; 45: 15-21, 46:11-47:8). Fifth, Ramada has demonstrated that it made written demand for payments to Defendants in a letter dated February 25, 2010, wherein Ramada acknowledged Petersburg's unilateral termination of the License Agreement and demanded

payment of liquidated damages and Recurring Fees. (Workman Aff.. ¶ 40). Finally, despite this written demand for payment, Defendants have not remitted payment of outstanding liquidated damages and Recurring Fees stemming from the premature termination of the Licensing Agreement.

As Ramada has asserted facts to prove each element of breach of the Guaranty, and such facts are appropriately supported by the record and undisputed by the Defendants, this Court will accept such material facts as true. Ramada has demonstrated that there is no genuine issue of material fact and thus Ramada is entitled to summary judgment on the Seventh Count of the Complaint.

### 3. LIABILITY ON COUNT ONE

Ramada asserts that the February 2, 2010 termination of the License Agreement precluded Defendants from further use of Ramada® Marks in or around the Facility. Plaintiff further argues it is entitled to summary judgment on its claims under Sections 32 and 43(a) of the Lanham Act for the continued unauthorized use of Ramada® Marks. (Pl.'s Brief 9; see Workman Aff. ¶48). Ramada contends that an August 13, 2010 inspection of the facility revealed Defendants had continued to identify the Facility as a Ramada facility after termination. (Workman Aff. ¶46).

Section 32 of the Lanham Act disallows the unauthorized commercial use of "any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114 (a)(1). Section 43(a) pertains to liability for a false designation of goods or services,

11

stating:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which– (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, [. . .] shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act. See 15 U.S.C. § 1125(a)(I)(A).

Three elements are relevant to the inquiry of whether trademarks are valid. Analysis under Section 32 involves consideration of the validity of a trademark, authority for the trademark's use, and the likelihood of causing confusion through use. Travelodge Hotels, Inc. v. Elkins Motel Assoc., Inc, No. Civ. 03-799, 2005 WL 2656676, at *8 (D.N.J. October 18, 2005). The last element is also pertinent to an analysis of liability under Section 43(a). Id.

First, the Court inquires into the validity of a trademark. Id. Federal registration of a trademark is prima facie evidence of a trademark's validity. 15 U.S.C. § 1115(a). Ramada® Marks are registered and Defendants have not contested that Plaintiff owns Ramada® Marks or that the Marks are valid. The next level of inquiry is whether Defendants possessed authority to continue to use Ramada® Marks. The termination of a trademark license precludes further use of marks. United States Jaycees v. Philadelphia Jaycees, 639 F. 2d 134, 143 (3d Cir. 1981); see Travelodge Hotels, Inc. v. Elkins Motel Assoc., Inc, 2005 WL 2656676, at *8 (finding the termination of a license agreement strips defendants' authority to use plaintiff's marks). After the License Agreement was terminated on or about February 2, 2010, Defendants no longer had the authority to use Ramada® Marks. Finally, in order to prevail on a trademark infringement suit under the Lanham Act, the owner of a legally protected mark must demonstrate defendant's

12

use of a similar mark "causes a likelihood of confusion." KOS Pharms., Inc. v. Andrx Corp., 369 F.3d 700, 708-09 (3d Cir. 2004). In cases, as in the instant one, where the party uses the exact same trademark, the Third Circuit has held a great likelihood of confusion exists. S & R Corp v. Jiffy Lube., 968 F.2d 371, 375 (3d Cir. 1992). Defendants do not dispute that Petersburg Regency used Ramada® Marks following the termination of the License Agreement. Defendants' breach led to the termination of the contract and Defendants then failed to promptly remove signage from the Facility and terminate the use of Ramada® Marks as required. Defendants' failure to do so cannot reasonably be viewed as anything other than intentional. Plaintiff is thus entitled to summary judgment on the issue of liability for Count One.

### III. DAMAGES

Plaintiff has requested this Court grant its motion for summary judgment with respect to the following damage claims: (1) liquidated damages in the amount of $192,000.00, (2) outstanding Recurring Fees in the amount of $702,281.10, and (3) infringement damages in the amount of $265,545.18 for Defendants' unauthorized use of the Ramada Marks. (Pl.'s Brief 12). Ramada also seeks an award of prejudgment interest and attorney's fees and costs of suit consistent with the terms of the License Agreement. Defendants have not responded to the Plaintiff's damage claims.

#### A. LIQUIDATED DAMAGES

Ramada seeks liquidated damages from Defendants pursuant to section 12.1 of the License Agreement, in the amount of $192,000.00. Under New Jersey law, liquidated damages provisions are enforceable where: (1) the damage sustained by the non-breaching party would be difficult to ascertain, and (2) the amount is a reasonable forecast of the loss sustained.

13

Wasserman's Inc. v. Middletown, 645 A.2d 100, 106 (N.J. Sup. Ct. 1994)(citations omitted). In evaluating a liquidated damages clause, the court looks to the reasonableness of the clause "either at the time of contract formation or at the time of the breach." Naporano Assocs., L.P. v. B & P Builders, 309 N.J. Super. 166, 176 (App. Div 1998) (quoting Wasserman's, 645 A.2d at 107). When two commercial parties have comparable bargaining power, a presumption exists that the liquidated damages clause is valid. Wasserman's, 645 A.2d at 107. The party owing liquidated damages had the burden "to offer proof of contractually acceptable excuses in order to avoid the application of the liquidated damages clause." Monsen En'g Co. v. Tami-Githens, Inc., 530 A.2d 313, 318 (App. Div. 1987). Whether an unambiguous liquidated damages clause is valid and enforceable is a question for the court. Naporano, 309 N.J. Super. at 176 (citing Wasserman's, 645 A.2d at 109).

The liquidated damages clause at issue reads in relevant part: "liquidated damages payable under section 12.1 for a termination that occurs before the last two License Years will be One Thousand Dollars ($1,000) for each guest room of the Facility you are authorized to operate at the time of Termination." (License Agreement 12.1, 18.4, August 10, 2010, ECF No. 1-2). Ramada has demonstrated that each of the two requirements for a valid liquidated damage clause are met. First, section 12.1 of the License Agreement ties the amount of liquidated damages to the royalties and fees Ramada will lose due to premature termination of the License Agreement. Second, as the amount of fees is tied to month gross room revenues of the facility, Ramada correctly asserts that actual damages resulting from the breach amount are extremely difficult to estimate as room rates and occupancy levels are constantly in flux. Even without this, Defendants have failed to establish, and have made no attempt to establish, that the liquidated

damage clause is invalid nor offered proof of any contractually acceptable excuse to avoid the application of this clause. Ramada is therefore entitled to summary judgment on the issue of liquidated damages.

Ramada further claims it is entitled to interest at a rate of 1.5% on the liquidated damages claim and requests $72,714.24 in interest owed on liquidated damages. This Court disagrees. Section 7, providing for Recurring Fees, specifically discusses a 1.5% interest rate. The liquidated damages clause, contained in section 12, contains no mention of interest nor references section 7. Section 7 also fails to reference section 12. A contract is required to be construed as a whole and the Court must ascertain the interests of the parties based on "the entire instrument and not from detached portions." Krosnowski v. Krosnowski, 126 A.2d 182, 188 (N.J. Sup. Ct. 1956)(citations omitted); see Ramada Franchise Sys. Inc., v. Polmere Lodging Corp., No. 98-CV-2909, 1999 U.S. Dist. LEXIS 23435, at *11 (D.N.J. July 30, 2009) (finding the interest provision contained in the section of the licensing agreement pertaining to recurring fees not applicable to the subsequent section regarding liquidated damages). Viewing the License Agreement in whole, the Court finds section 12 cannot be read to infer application of an interest provision contained in section 7 of the agreement. The Court therefore grants summary judgment on the amount of liquidated damages but denies summary judgment on interest on the liquidated damages.

### 2. RECURRING FEES

Ramada asserts that section 7, section 18, and schedule C of the License Agreement obligate Petersburg Regency and, by extension, Guaranty Harmon to make payment of Recurring Fees in the amount of $702,2810. (See Pl.'s Brief 13). Defendants raise no arguments concerning the payment of or amount to be paid in Recurring Fees. The obligations incurred by

Defendants pursuant to the aforementioned sections of the License Agreement are presented in a detailed listing of required Recurring Fees, leaving no question as to how such fees should be calculated.

Ramada also seeks prejudgment interest on Recurring Fees at a rate of 1.5% per month, in accordance with the Section 7.3 of the License Agreement. Prejudgment interest is intended to reimburse the claimant for the loss of the use of its investment or its funds from the time of the loss until judgment is entered. In re Bankers Trust Co., 658 F.2d 103, 108 (3d Cir. 1981). The availability of prejudgment interest on state law claims is governed by state law. Mid-Jersey Bank v. Fidelity Mortgage, 518 F.2d 640, 645 (3d Cir. 1975). In New Jersey, prejudgment interest will be awarded from the time it accrues to the time judgment is entered. Rova Farms Resort, Inc. v. Investors Ins. Co. Of Am., 323 A. 2d 495, 512 (N.J. Sup. Ct. 1974). Prejudgment interest in a commercial case may be determined by a contractual provision. Utica Mut. Ins. Co. v. DiDonato, 453 A.2d 559, 565 (N.J. Sup. Ct. App. Div. 1982). Accordingly, the Court grants summary judgment on this claim and Ramada is entitled to Recurring Fees in the amount of $702,281.10, inclusive of interest through February 21, 2012 calculated in accordance with Section 7.3 of the License Agreement.

### 3. INFRINGEMENT DAMAGES

Plaintiff also asserts it is entitled to damages stemming from Defendants' unauthorized use of Ramada® Marks after termination in violation of the Lanham Act. Plaintiff seeks: (1) Defendants' profits, (2), compensatory damages in the amount based upon the Recurring Fees that Ramada would have received during the period of infringement, and (3) treble damages due to Defendants' intentional and deliberate use of Ramada® Marks post-termination. (Pl's Brief

16). Under the Lanham Act, a plaintiff is entitled to recovery of "any damages sustained by the plaintiff" to be "assessed by the Court or under the Court's discretion." 15 U.S.C. § 1117(a). Furthermore, Section b of 1117 further provides for judgment of three times profits or damages, in addition to attorney's fees, in the event of a violation of section 32(1)(a) for the intentional use of a mark or designation in connection with the sale, offering for sale, or distribution of goods or services. 15 U.S.C. § 1117(b). The Lanham Act allows for an award of damages even where such damages are not susceptible to precise calculations. Ramada Inns, Inc. v. Gasden Motel Co., 804 F.2d 1562, 1565 (11th Cir. 1987); see Travelodge Hotels, Inc. v. Elkins Motel Assoc., Inc, No. Civ. 03-799, 2005 WL 2656676, at *8 (D.N.J. October 18, 2005) (finding that although plaintiff's damages could not be predicted with exact specificity, damages were still appropriate under the Lanham Act). Franchise fees paid for use of a mark are a proper measure of damages under the Lanham Act. Ramada Inns, 804 F.2d at 1565.

Here, Ramada seeks damages based on lost royalties under Recurring Fees to which it would have been entitled during the period of Ramada's infringement. Defendants received written notice that the License Agreement was terminated on February 2, 2010 and demanding Petersburg Regency cease and desist from continued unauthorized use of Ramada ® Marks. (Pl's Statement of Undisputed Material Facts ¶ 38; Workman Aff. at ¶ 40). Despite the written demand, Defendants continued to use Ramada ® Marks through at least August 13, 2010. (Pl's Statement of Undisputed Material Facts ¶ 44; Workman Aff. at ¶ 46).

Ramada further asserts that treble damages are appropriate in this case as Defendant's conduct in continuing to operate the Facility using Ramada® Marks for six months post-termination was willful and deliberate. Based on the deliberate and wilful infringement of

Ramada ® Marks, Ramada seeks infringement damages for Recurring Fees for the period of February 12, 2010 to August 13, 2010 and estimates that their lost revenue in Recurring Fees, multiplied by the six months of infringement is $88,515.06. Ramada asserts total infringement damages when the twelve months of average monthly fees are trebled totals $265,545.18. (Pl.'s Brief 17; Workman Aff. ¶ 58). The Court finds that Defendants possessed the requisite intent to infringe upon Ramada's trademark rights. Defendants were put on notice that they were to terminate display of Ramada ® Marks and yet signage and use of Marks was not discontinued at the Facility until at least six months later. Having found Defendants possessed the requisite intent to infringe upon Ramada's trademark rights, this Court finds damages should be trebled pursuant to 15 U.S.C. § 1117(b). See Travelodge Hotels, Inc. v. Elkins Motel Assoc., Inc, No. Civ. 03-799, 2005 WL 2656676, at *12 (D.N.J. October 18, 2005) (finding treble damages appropriate where defendants were put on notice that they were displaying marks in violation of termination duties).

### 4. ATTORNEYS' FEES AND COSTS

Under New Jersey law, parties are permitted to contract to shift fees and costs in the event of litigation between them, provided such contractual provisions are reasonable. North Bergen Rex Transport, Inc. v. Trailer Leasing Co., 730 A.2d 843, 848 (N.J. Sup. Ct. 1999). An assessment of reasonableness is made through consideration of the amount of success achieved by the party seeking reimbursement and the prevailing rates for legal services in the relevant professional and geographical communities. Id. at 848-49. New Jersey "does not have a public policy which would prevail over the enforcement of an express contract between private parties." Papalexiou v. Tower West Condominium, 167 N.J. Super. 516, 531 (Ch. Div. 1979).

In the instant case, Defendants consented, pursuant to section 17.4 of the License agreement, as incorporated by the Guaranty, to "pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this Agreement or collect amounts owed under this Agreement." (License Agreement 17.4, August 10, 2010, ECF No. 1-1). It has been determined that Ramada is the prevailing party, and thus, is entitled to reasonable attorney's fees and costs incurred in connection with the instant action. Ramada is to promptly submit proper documentation, including a proper affidavit that the fees alleged are reasonable.

### IV. CONCLUSION

For the reasons stated, it is the finding of this Court that Plaintiff's Motion for Summary Judgment as to the First, Third, Fifth, and Seventh Counts of its Verified Complaint is **granted**. Ramada is awarded liquidated damages in the award of $192,000.00, Recurring Fees with a 1.5% interest rate in the amount of $702,281.10, infringement damages in the amount of $265,545.18, and reasonable attorneys' fees and costs. An appropriate Order accompanies this Opinion.

Dennis M. Cavanaugh, U.S.D.J.

Date: October 1, 2012

Original: Clerk's Office
cc: Hon. Joseph A. Dickson, U.S.M.J.
All Counsel of Record
File